CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAY 17 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JOSEPH P. LIGHT, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:10-cv-70 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) By: Hon. Glen E. Conrad |
| Social Security, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Cynthia S. Light,[1] was born on May 9, 1966 and eventually obtained an associate's degree from a community college. Light has worked as a nurse's aide, as a packer/shipper in a warehouse, as a school health clerk for a nursing home, and in various

---

[1] Cynthia S. Light passed away sometime after filing this case. By order entered February 25, 2011, Joseph P. Light was substituted for Cynthia S. Light as the party in interest. For purposes of consistency and clarity, however, the court will continue to refer to Cynthia S. Light as the "plaintiff" in this cause.

temporary job placements in health care-related fields. The Administrative Law Judge found that plaintiff last worked on a gainful basis prior to March 1, 2000. On July 11, 2006, plaintiff filed an application for disability insurance benefits. In filing her claims, plaintiff alleged that she became permanently disabled for all forms of substantial gainful employment on March 1, 2000. As to her application for disability insurance benefits, the record reveals that Light met the insured status requirements of the Act through the last quarter of 2001, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if she established that she became disabled for all forms of substantial gainful employment on or before December 31, 2001. See gen., 42 U.S.C. § 423(a).

Light's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 24, 2008, the Law Judge also determined that plaintiff is not entitled to disability insurance benefits. The Law Judge found that Light did not experience disability of requisite severity and duration at any time prior to termination of insured status. The Law Judge held that plaintiff's stated physical ailments—her migraine headaches, fractured ankle, and lumbosacral muscle spasm—were largely resolved after contemporaneous treatment and therefore did not constitute a severe impairment within the meaning of 20 C.F.R. § 404.1521. The Law Judge likewise held that plaintiff's stated mental impairments were not of requisite severity, noting that they caused no more than a "mild" limitation in any of the first three functional areas noted in 20 C.F.R. § 404.1520a(c)(4) and no limitation in the last one. Specifically, the Law Judge found that plaintiff's mental health treatment records indicated that she was not serious about securing counseling, that her stress was largely a result of her marital

and familial conditions, and that the prescribed pharmaceuticals controlled symptoms of her stress in late 2000 and 2001. The Law Judge also determined that none of Light's alleged impairments lasted for a continuous period of at least twelve months beginning at a time prior to her date last insured. 42 U.S.C. § 423(d)(1)(A). Accordingly, the Law Judge concluded that Light did not become disabled for all forms of substantial gainful employment at any time during the period in which she still enjoyed insured status. See 20 C.F.R. § 404.1520(c).

Light appealed the denial of her claim for disability insurance benefits to the Social Security Administration's Appeals Council. However, the Appeals Council eventually adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, Light has now appealed the denial of her claim for disability insurance benefits to this court. Light has not argued before this court that the Commissioner erred in finding that her asserted physical ailments constituted a severe impairment prior to December 31, 2001. She claims instead that the Law Judge erred only in finding that her asserted mental health ailments did not constitute a severe impairment for purposes of the Social Security Act.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438

3

F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

Under 20 C.F.R. § 404.1520(c), it is provided that if a claimant does not suffer from a severe impairment, it must be determined that the claimant is not disabled for purposes of an application for disability insurance benefits, without consideration of factors such as age, education, and prior work experience. For purposes of determining the existence of a severe impairment, 20 C.F.R. § 404.1521 provides as follows:

> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
> 	(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> 	(2) Capacities for seeing, hearing, and speaking;
> 	(3) Understanding, carrying out, and remembering simple instructions;
> 	(4) Use of judgment;
> 	(5) Responding appropriately to supervision, co-workers and usual work situations; and
> 	(6) Dealing with changes in a routine work setting.

After a review of the record in this case, the court is constrained to conclude that the Commissioner's denial of plaintiff's application for disability insurance benefits is supported by substantial evidence. See 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and quotation marks omitted). In reviewing whether substantial evidence supports the findings of the Commissioner, the court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of [the Commissioner]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotation marks omitted). Thus, "[w]here conflicting evidence allows reasonable minds to differ

as to whether a claimant . . . is disabled, the responsibility for that decision falls on [the Commissioner]." Craig, 76 F.3d at 589. Here, not only was the Law Judge's determination that Light did not suffer from a severe mental impairment supported by substantial evidence, but the evidence also supports a finding that plaintiff's impairments did not incapacitate her from performing her past relevant work or bar her from pursuing all other reasonably-available forms of employment prior to the termination of her insured status. It follows that the Commissioner's final decision denying plaintiff's claim for disability insurance benefits must be affirmed.

It appears that Light was diagnosed with depression on several occasions during the relevant time frame. On September 3, 1999, Dr. Long diagnosed her with depression and gave her samples of Zoloft. (TR 862.) After Light complained that the Zoloft interfered with her sleep, Dr. Whitman saw her, diagnosed her with depression with anxiety, and prescribed Effexor. (TR 860.) At a follow-up appointment on October 7, 2009, Dr. Whitman gave her a month's supply of Celexa samples instead of the Effexor to respond to Light's complaints about the latter. (TR 859.) Both of these diagnoses, however, date from before Light's stated onset date of March 1, 2000. Nor is there any question that the Zoloft was effective in combating Light's depression except for the fact that it diminished her ability to sleep. (TR 859-60.) Moreover, by November 23, 2001, Light was taking Paxil to treat her depression and told her treatment provider that she was "doing better since starting the Paxil." (TR 857.)

Light also received counseling and therapy services from Harrisonburg-Rockingham Community Services Board ("HRCSB") during this time-frame. Upon Light's intake on November 19, 1999, she was assessed with an initial global assessment of functioning ("GAF")

score of 53.[2] (TR 269.) While in treatment of HRCSB, she participated in therapy sessions with Janis Norton, a licensed clinical social worker. Norton recorded that Light exhibited symptoms of depression, anxiety, and agoraphobia. (TR 270.) On October 19, 2000, Norton communicated to Dr. McClean-Rice, the psychiatrist overseeing Light's treatment at HRCSB, her suspicions that Light might have been suffering from bipolar disorder, but immediately caveated that she was "no expert in this area and am just comparing her to the other clients I have worked with." (TR 279.) Dr. McClean-Rice declined to diagnose Light as bipolar, but did note that she exhibited symptoms of depression and a generalized anxiety disorder. (TR 278.) Two months later, Dr. McClean-Rice observed that Light exhibited "[n]o biological symptoms of depression," and that she "actually smiles when she talks about her symptoms." (TR 277.) See also TR 280 (noting on September 13, 2000, that Light was "[f]ull of smiles and doesn't seem depressed . . ."). Dr. McClean-Rice also observed in July 2001 that, despite plaintiff's claims to the contrary, the antidepressant medications seemed to have a positive impact on plaintiff's behavior. (TR 275.) Shortly thereafter, Light stopped attending counseling sessions at HRCSB and was eventually discharged on November 7, 2001. At the time of Light's discharge, Norton assessed Light as possessing a GAF level of 50.[3] (TR 265.)

Unfortunately for Light, the diagnoses made by Light's treating physicians and the observations made by Dr. McClean-Rice do not themselves compel a finding that Light suffered

---

[2] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score of between 51 and 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 47 (4th ed. text rev. 2000).

[3] A GAF score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

from a severe mental impairment. Indeed, it is clear that, despite causing some ancillary side-effects, several antidepressants proved capable of alleviating Light's depression, as Light herself admitted to her treatment providers. "Of course, a remediable impairment is not disabling." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983).

Nor was the Law Judge bound to override the opinions of Light's treating physicians by giving controlling weight to Norton's assessment of the severity of Light's depression as reflected in the GAF scores. Only evidence from an "acceptable medical source" may establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1513(a). Social workers are not listed as an acceptable medical source. See 20 C.F.R. §§ 404.1513(a); 416.902. Evidence regarding the severity of a claimaint's impairments, however, may come from either "acceptable medical sources" or "other sources," including "public and private social welfare agency personnel." 20 C.F.R. § 404.1513(d)(3); see also 20 C.F.R. § 404.1527(a)(2).

As the Social Security Administration has explained, opinion evidence from "other sources" such as social workers should be considered under the factors enumerated in 20 C.F.R. § 404.1527(d) and 416.927(d). See Social Security Ruling (SSR) 06-3p, 71 Fed.Reg. 45,593, 2006 WL 2329939, at *4 (Aug. 9, 2006). With respect to social workers specifically,

> it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

Id. at *5. Although an opinion from a social worker "may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source," this

7

could generally occur only if the social worker "has seen the individual more often and has greater knowledge of the individual's functioning over time and if the [social worker's] opinion has better supporting evidence and is more consistent with the evidence as a whole." Id. at *6.

In this case, the Law Judge was not bound to privilege Norton's GAF assessments over the observations of Light's treating physicians that Light's depression was responsive to medication. Not only is the record sparse as to Norton's qualifications, the length and frequency of treatment, and the extent of the treatment relationship, but there is little or no evidence supporting Norton's assessment of the severity of Light's depression or describing the methodology by which she arrived at the particular GAF scores that she recorded. See id.; 20 C.F.R. § 404.1527(d). Nor is it clear from the record that Norton met with Light much more frequently than the treating physicians, particularly Dr. McClean-Rice. Cf. TR 471.

These factors, in combination with Norton's own deference to the opinion of Dr. McClean-Rice, see TR 279, compel the conclusion that the Law Judge was not required to accord Norton's assessment of the severity of Light's impairment more weight than the general assessments of Light's other treatment providers. As at least one other court presented with similar circumstances has observed, "The ALJ's failure to specifically discuss [claimant's] GAF score of 50 was not error. The ALJ was not required to discuss every piece of evidence, only significant, probative evidence. An individual GAF score—particularly one from a social worker—does not fall into this category." Ramirez v. Astrue, 2011 WL 1155682, at *5 n. 4 (C.D. Cal. March 29, 2011) (unpublished) (citations omitted).

Significantly, none of Light's other treatment providers has in any way indicated that Light's mental health impairment significantly limited her daily activities, social functioning, or

8

concentration. See 20 C.F.R. § 404.1520a(c)(4). Accordingly, the Law Judge's conclusion that plaintiff did not suffer from a severe impairment is supported by substantial evidence. See Dumas, 712 F.2d at 1553 (the Commissioner is entitled to rely not only on what the record says, but on what it does not say). See also 20 C.F.R. § 404.1521 (an impairment is not severe when it does not significantly limit a claimant's physical or mental ability to do basic work activities). But see Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Moreover, even if Light's medically determinable impairment could be considered "severe" for purposes of § 404.1521, it is clear from the record that Light would ultimately be ineligible for disability benefits under the fourth or fifth step of the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. See Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (a Law Judge's error is harmless where it does not affect the ultimate disability conclusion); Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). None of Light's treating physicians ever indicated that, with or without medication, her mental health impairments rendered it impossible for her to return to all of her past relevant work or to perform all other jobs existing in significant number in the national economy. See 20 C.F.R. §§ 404.1520(g), 1560; Dumas, 712 F.2d at 1553. See also TR 469-71 (finding that Light's treatment records were insufficient upon which to base such a finding).

Although the Vocational Expert ("VE") opined that he believed Light was incapable of performing any extant job, his opinion assumed that Light suffered from a combination of physical and mental ailments and was, more significantly, offered in response to the Law Judge's hypothetical question that charged him to assume that Light's description of the severity of her pain was to be given full credibility. (TR 44.) Light does not challenge the Law Judge's findings

9

that her physical ailments were minimal. Moreover, as is clear from the Law Judge's opinion, he did not take Light's assertions with respect to her mental impairments at face value, finding instead that she appeared to perform fairly well on antidepressant medication, suffered only mild limitations to her daily activities, social functioning, and concentration, and exhibited a work record that was indicative of an individual without much earnestness to work. (TR 13-14.) Substantial evidence in the record supports these credibility conclusions: Light admitted that the antidepressants alleviated her depression despite causing some side effects, attended mental health appointments at HRCSB only sporadically, cared for her three children, and went on fishing trips during the period of her alleged disability. See TR 20-21, 231, 267, 272; see also TR 130 (noting that plaintiff had wanted to stay home with her children prior to her heart attack). The VE's opinion, based as it was on the assumption that the Law Judge would fully credit plaintiff's testimony, therefore does not control the outcome of the eligibility analysis at the fourth or fifth step of the sequential analysis set forth in § 404.1520(g). It follows that the final decision of the Commissioner is supported by substantial evidence, and that the denial of benefits must be affirmed. Johnson, 434 F.3d at 653; Craig, 76 F.3d at 589. See also id. at 594-95 (the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled).

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson, 402 U.S. at 400; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed.

Laws, 368 F.2d at 642. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 17th day of May, 2011.

_____
CHIEF UNITED STATES DISTRICT JUDGE